UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

Case No. 10-20535
Honorable David M. Lawson

v.

BOBBY W. FERGUSON, MICHAEL
WOODHOUSE, CALVIN L. HALL,
FERGUSON ENTERPRISES, INC., XCEL
CONSTRUCTION SERVICES, INC., and
A & F ENVIRONMENTAL/JOHNSON
CONSTRUCTION SERVICES,

                Defendants.
_____/

**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**

On November 28, 2011, defendants Bobby W. Ferguson, Ferguson Enterprises, Inc., and A&F Environmental/Johnson Construction Services filed a motion to suppress evidence seized from 14385 Wyoming St., Detroit, Michigan. On February 27, 2012, the Court entered an order denying the motion to suppress. On March 12, 2012, the defendants filed a motion for reconsideration of the Court's order, arguing that the Court was misled in believing that federal conflict of interest provisions were applicable to the defendants and that newly uncovered evidence demonstrates that the defendants were not subject to federal procurement requirements. The Court ordered the government to respond to the defendants' motion, and the government filed a response on April 9, 2012. In its response, the government argues that the federal procurement regulations did apply to the defendants and the evidence presented by the defendants was in the defendants' possession prior to the hearing on the motion to suppress.

Motions for reconsideration may be granted pursuant to E.D. Mich. LR 7.1(g)(1) when the moving party shows (1) a "palpable defect," (2) that misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Mich. Dep't of Treasury v. Michalec*, 181 F. Supp. 2d 731, 734 (E.D. Mich. 2002) (citations omitted). However, motions for reconsideration should not be granted when they "merely present the same issues ruled upon by the court, either expressly or by reasonable implication." E.D. Mich. LR 7.1(g)(3).

At the outset, it must be noted that the defendants are pressing a line of argument – that federal laws and regulations did not apply to the Garden View Estates ("GVE") infrastructure project or to the bidding process for contracts on that project — that has been rejected repeatedly by the Court. The defendants argue that federal procurement regulations were not applicable to the Detroit Building Authority ("DBA") and its process for selecting defendant Xcel Construction to be the construction manager on the GVE infrastructure project. However, as the government points out, the agreement between the Detroit Housing Commission ("DHC") and the City of Detroit expressly provides that the DBA's "[p]rocurement of construction contractor services and other professional services related to infrastructure improvements shall be in compliance with all applicable federal statutes, HUD-OPHI and public housing requirements." Defs' Mot. to Suppress Ex. 4 at 5. The fact that the DBA was not a party to that agreement does not also prove the negative proposition: that the DBA was exempt from or free to disregard the federal procurement requirements, as the defendants have urged.

Further, the government has produced a contract between the DBA and the City of Detroit memorializing the administration of infrastructure construction funds by the DBA. That agreement

states that the DBA "acknowledges that the Project is part of a project funded by the Hope IV Program, and the [DBA] agrees to comply with the requirements of the Hope IV Program, solely as directed by the City, including compliance with the uniform administrative requirements contained in HUD regulations at 24 CFR Part 85 . . . ." Gov.'s Resp. to Defs.' Mot. for Reconsideration Ex. 2 at 3-4. It is that section of the HUD regulations that contains the conflict-of-interest provisions that the defendants argue did not apply to the DBA. *See* 24 CFR § 85.36(b)(3).

Nor do the emails the defendants have provided as exhibits to their motion change the analysis. The defendants present emails between various officials in the Department of Housing and Urban Development ("HUD") discussing the applicability of federal procurement regulations to the procurement process for the GVE infrastructure project. The defendants place great weight on an email from Vickie Longosz stating that the Detroit Housing Commission and the City of Detroit were required to follow only applicable state and local laws and regulations. However, the defendants fail to note the caveat that those laws must conform to the applicable federal standards. The defendants also point to an email from Tom Teresi, the Hope IV Grants Manager with HUD, in which he states that the chain of federal requirements was satisfied with the execution of the agreement between the Detroit Housing Commission and the City of Detroit. But these emails make no reference to the agreement between the City of Detroit and the DBA requiring the DBA to comply with federal procurement regulations, nor do they specifically discuss the agreement between the DHC and the City of Detroit requiring the same.

Further, as the government points out, other HUD officials had different views as to the applicability of federal procurement regulations. The government has presented a memorandum of an interview with Lindsay Reames, the HUD Recovery Administrator at the DHC, in which Reames

stated that federal procurement regulations applied to the GVE project. The government has also produced a memorandum interview with Teresi, in which Teresi stated that he did not understand why the city would have been advised that it did not have to comply with regulations, as usually there are more regulations in place. The emails presented by the government also contain opinions from Robert Nelson, a HUD official at the Detroit field office, and Michael Farley, a HUD Senior Public Housing Recovery Specialist, that federal procurement regulations did apply where the City of Detroit was acting as a developer.

This entire discussion, moreover, must be considered in the context of the defendants' ultimate burden of showing that the search warrant affiant made deliberately false statements to the magistrate judge. *Franks v. Delaware*, 438 U.S. 154, 155 (1978). There must be some intentionality to the affiant's false swearing before *Franks* even applies. Carelessness or negligence simply will not suffice. *See Herring v. United States*, 555 U.S. 135, 145 (2009) (citing *Franks*, 438 U.S. at 171). When there is arguable factual support for the affiant's assertions in the search warrant affidavit, proof of contradictory facts simply does not establish a level of prevarication that would upset a duly-issued search warrant.

The Court dealt with all of this earlier. The defendants present issues already ruled upon by the Court and have not demonstrated the existence of a palpable defect that misled the Court. The Court remains convinced that the defendants have not met their burden making a "substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155. Therefore, the Court will deny the defendants' motion for reconsideration.

Accordingly, it is **ORDERED** that the defendants' motion for reconsideration [dkt. #149] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 12, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 12, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL